Argued October 27, affirmed November 30, 1915.

## YORK *v.* DALTON.

(153 Pac. 60.)

**Partnership—Accounting Between Partners—Evidence.**

1. Evidence *held* to show an accounting had been made between partners prior to the death of one.

**Partnership—Actions for Accounting—Evidence.**

2. Evidence *held* to sustain the findings of the court in an action for an accounting against a member of the former partnership.

[As to actions between partners, see note in 12 **Am. Dec.** 649.]

From Baker: JOHN W. KNOWLES, Judge.

In Banc. Statement by MR. JUSTICE BEAN.

This is a suit by Effie L. York, administratrix of the estate of James T. York, deceased, against James Dalton for an accounting of the partnership affairs between James T. York, deceased, and James Dalton, the defendant, who were equal partners. The surviving partner made no application for the administration of the partnership estate, and therefore, pursuant to the statute, the same was administered by the administratrix of the estate of the deceased, James T. York. After taking an accounting the Circuit Court found that certain land purchased from one Miller was held in trust by York for the partnership, and rendered a decree in favor of defendant for the sum of $317.28 as a balance due him from the York estate in settlement of the partnership accounts, and also of all private dealings between the two men. Defendant appeals. By her complaint the plaintiff shows that she is the wife of James T. York, deceased; that he died on October 24, 1912, at which time the partnership owned 2,908 sheep and lambs, 691 tons of hay, one stallion of the probable value of $500, and one camp wagon worth

$40, and was owing various sums of money; that on January 24, 1913, plaintiff and defendant divided equally all the sheep and the remaining portion of the hay, plaintiff retaining possession of the stallion and defendant of the camp wagon; that during the administration of the estate the plaintiff expended and paid claims owing by the partnership in the sum of $3,212.82.

The defendant admits a portion of the complaint, and sets forth that the partnership was formed about September 10, 1908, at which time they borrowed $8,000, which was paid for 228 head of steers; that at different times they purchased livestock and conducted a large business; that York purchased 120 acres of land in Union County on behalf of the firm, taking title to the same in his individual name; that there is about $20,000 due Dalton from the partnership. The record discloses numerous partnership transactions involving considerable amounts.                    Affirmed.

For appellant there was a brief over the name of *Messrs. McCulloch & McCulloch,* with an oral argument by *Mr. Charles H. McCulloch.*

For respondent there was a brief over the names of *Mr. John L. Rand, Mr. A. A. Smith* and *Mr. William H. Packwood, Jr.,* with oral arguments by *Mr. Rand* and *Mr. Smith.*

Mr. Justice Bean delivered the opinion of the court.

1. It appears that Dalton conducted the principal part of the firm's business for a time, keeping no regular book accounts. He states:

"When we first started in, we kind of divided the thing up. * * After I turned the business over to him [February 14, 1909] * * he said he would keep books."

Mr. York kept the accounts in pocket memorandum-books. It seems that Mr. Dalton and Mr. York had implicit confidence in each other. Both were successful business men and had means. At the time of making the various settlements they would take into consideration large items, known to them, of which no record was made. Mr. Dalton vouches for the truth of any account found in Mr. York's handwriting. One of the principal questions for determination in this case is: Over what period of time should this accounting extend? It is admitted that there was a settlement between the parties up to March 1, 1910. We also find in Mr. York's book, Exhibit 24, "Settled up to March 1, 1910, $500.00 running expenses for sheep." In Dalton's book, underneath items of partnership account, we find the following in his handwriting: "November 10, 1910, Paid in full except $500.00 on hand." He crossed out the account to that date in the same manner as old accounts of 1908. Dalton claims, however, that $3,100 was due him upon this settlement, but the evidence shows that York deposited large amounts in the bank to Dalton's credit, of which deposits Mr. Dalton had not been notified, and also that York expended considerable sums in the business, none of which had been credited to York by Dalton. We think that the parties settled to the above date in a more satisfactory manner than an adjustment can now be made for them, and that such settlement should not be disturbed.

2. At one time during the summer of 1912, Mr. York employed one Sturgill to make a statement of account for the firm, and informed him that they had settled up to February 1, 1911. A partial statement was made, but not completed, before Mr. York's death.

From the fact that Mr. York appears to have been paying strict attention to the care of the livestock and made brief memoranda of the business, it is difficult to ascertain the exact standing of the account. Mr. Dalton presented a verified account to the administratrix, in which the first item charged was "November 10, 1910, balance on hand $500.00"; the second, "December 1, Travillion 63 cows & one bull $2050.00." No other items appear dated prior to February 1, 1911. It is conceded by plaintiff that the $2,050 for the Travillion cattle should be accounted for on the part of York of a date later than February 1, 1911, which practically brings the account down to the latter date. We have noted the various settlements for the purpose of showing the manner of conducting the business and recording the same.

It is clearly shown by the evidence that the $500 on hand November 10, 1910, was paid to one Dustan who had charge of the sheep and was expended by him in caring for them prior to February 1, 1911. From a careful perusal of the 360 pages of typewritten evidence and an examination of the various exhibits in the record we find that the conclusion reached by the Circuit Court is substantially correct. We are confirmed in this belief by looking at the matter in a general way and considering the larger items. At one time the sum of $8,000 was borrowed from the bank by the partners and placed to the account of James T. York. At another time $9,000 was obtained as a loan and placed to the credit of Mr. Dalton. As to these large amounts the men did not appear to rely upon the memorandum accounts, but upon their memory, and the notes in the bank, and they rested upon an entirely different footing from the expenses in caring for the livestock.

After February 1, 1911, we make the net receipts received by James T. York from the partnership to be $1,335.75, and those received by Dalton, $642.29, making a total of $1,978.04. Deducting from York's receipts the amount to be paid Dalton, or $346.73, and adding the same to the amount received by Dalton, makes a net amount of receipts by each partner of $989.02. To the balance due from York's estate to Dalton, $346.73, should be added the balance due Dalton on private individual accounts of the two men of $2.05, making the amount of the decree in favor of Dalton $348.78.

With this slight correction above noted, the decree of the lower court is affirmed; plaintiff to recover costs.

AFFIRMED.